UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-321-GWU

| | |
|---|---|
| MICHAEL J. WAGERS, | PLAINTIFF, |
| VS.  **MEMORANDUM OPINION** | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | DEFENDANT. |

## INTRODUCTION

Michael Wagers originally brought <u>Wagers v. Barnhart</u>, London Civ. A. No. 03-432 (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI). After a period of administrative reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment of August 18, 2004 (Tr. 394-402), it is again before the Court on cross-motions for summary judgment.[1]

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir.

---

[1] While the appeal was pending in federal district court, the plaintiff filed another SSI application on July 16, 2003. (Tr. 903). This application was consolidated with the remanded claim. (Tr. 335).

1

Wagers

1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims.  See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).  Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under

certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is

3

Wagers

significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Wagers, a 37 year-old former bulldozer operator and telephone lineman with a high school equivalent education, suffered impairments related to the residuals of being status post left knee surgery, separation of the right shoulder, discogenic and degenerative disorders of the back, a history of a substance-induced mood disorder and polysubstance abuse/dependence (in remission). (Tr. 336, 345). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of sedentary level work. (Tr. 349). Since the available work was found to constitute a significant number of jobs in the national economy, he could not be considered

totally disabled. (Tr. 349). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 348).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert January Hall included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as (1) an inability to ever perform overhead work with the right upper extremity; (2) an inability to ever crawl or climb ropes, ladders or scaffolds; (3) an inability to stand for more than four hours in an eight-hour day in intervals of 30 minutes; (4) an inability to more than occasionally bend, stoop, crouch, kneel or climb stairs; (5) an inability to push or pull with the left leg; and (6) a need to avoid exposure to heights, dangerous or moving machinery, slippery or uneven surfaces and vibrations. (Tr. 1206-1207). In response, the witness identified a significant number of sedentary level jobs which could still be performed. (Tr. 1208). The ALJ then added such mental restrictions as a "moderate" limitation of ability to maintain attention and concentration for extended time periods, responding appropriately to changes in the work setting, and completing a normal workweek or workday without interruption and performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 1208). Hall indicated that these additional limitations would not change the available job

numbers. (Tr. 1208). Therefore, assuming that the vocational factors considered by Hall fairly depicted Wagers' condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

This action was previously reversed and remanded by the undersigned because the hypothetical question presented by the ALJ did not fairly characterize Wagers' physical condition. (Tr. 401). Dr. Gary Higgason (Tr. 219-227) and Dr. Kenneth Phillips (Tr. 228-238), the non-examining medical reviewers, were the only physicians of record to identify specific physical restrictions and each identified the existence of more severe limitations than were included in the question. Therefore, the hypothetical question did not fairly depict the plaintiff's condition. (Tr. 401-402). Upon remand, this problem has been cured.

The ALJ directly incorporated all of the physical limitations identified by Dr. Arthur Lorber, who testified at the administrative hearing as a medical advisor. (Tr. 1187-1189). The question was also essentially consistent with the restrictions reported by the aforementioned Dr. Higgason and Dr. Phillips as well as those of Dr. R. Brown, another medical reviewer who saw the record in the time period after the remand. (Tr. 1033-1042). Dr. Bobby Kidd examined the plaintiff on three occasions during the processing of this claim and found no functional limitations. (Tr. 617). More severe physical restrictions than those found by the ALJ were not cited by such treating and examining sources as the staff at Marymount Medical Center (Tr. 131-143, 152-162, 467-611), the staff at Appalachian Regional Healthcare (Tr. 144-

146, 288-305, 324-326), Dr. Daniel Chung (Tr. 163-179), the staff at the Spine and Brain Neurosurgical Center (Tr. 259-265, 280-287, 624-632, 691-693, 1009-1026), the staff at the Injury and Rehab Center of Kentucky (Tr. 266-271), Dr. Robert Hoskins (Tr. 272-277), the staff at Open MRI of London (Tr. 983), Dr. Neeraj Mahboob (Tr. 1006-1008), Dr. Eli Rubenstein (Tr. 1032), the staff at the University of Kentucky Medical Center (Tr. 1090-1142) and Dr. William Shaffer (Tr. 1143-1149). These reports provide substantial evidence to support the administrative decision.

Wagers argues that the ALJ erred by failing to make reference as to why the functional limitations noted by Dr. Patrice Beliveau in January of 2002 were not adopted.[2] (Tr. 320-323). Dr. Beliveau was a treating source at Cumberland Orthopedic & Sports Medicine. (Tr. 1082-1089). Normally this opinion would be entitled to superior weight and the administrative regulations require that an ALJ provide detailed reasons why the opinion of a treating source is not given controlling weight. 20 C.F.R. Section 404.1527(d)(2). The Sixth Circuit Court of Appeals has held that the failure by an ALJ to satisfy this procedural requirement can constitute reversible error even when the case is otherwise supported by substantial evidence. Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004).

---

[2]The claimant refers to the physician who completed the assessment as Dr. Robert Hoskins in his Memorandum of Law. However, the signature appears to be that of Dr. Beliveau. (compare Tr. 323 with Tr. 1084).

Wagers

The Court notes that Dr. Beliveau's assessment was largely compatible with the factors presented in the hypothetical question. However, the doctor indicated that Wagers could not lift any weight on a frequent basis while the question allowed him to lift up to ten pounds. (Tr. 320). Dr. Beliveau indicated a total inability to ever crouch and kneel, while these were restricted to an "occasional" basis in the question. (Tr. 321). Climbing was also totally precluded by Dr. Beliveau but the hypothetical allowed occasional climbing of stairs. (Tr. 321). Finally, the hypothetical question did not include a restriction on temperature extremes, although Dr. Beliveau indicated the need for one. (Tr. 322). Thus, some discrepancies do exist between the physician's assessment and the hypothetical factors.

The vocational expert identified the specific jobs of receptionist and sorter as being available under the terms of the hypothetical question. (Tr. 1208). The Dictionary of Occupational Titles (DOT) lists the job of receptionist at DOT Section 237.367-038 and the job of sorter at DOT Section 209.687-022. Both of these sections indicate that these positions require no more than occasional lifting of up to ten pounds and do not require one to climb, crouch, kneel, or be exposed to temperature extremes. Thus, these jobs are fully consistent with the limitations suggested by Dr. Beliveau.

The Court in Wilson suggested that the failure of an ALJ to comply with Section 404.1527(d)(2) could constitute harmless error if the failure was irrelevant.

8

Wilson, 378 F.3d at 546. In the present action, the actual jobs cited by the vocational expert were still compatible with Dr. Beliveau's limitations. Thus, the failure of the ALJ to cite reasons why this opinion was not given controlling weight was irrelevant. Therefore, the Court finds that any error was harmless.

The ALJ dealt properly with the evidence of record relating to Wagers' mental condition. The ALJ specifically presented the mental limitations noted by Psychologists Ann Demaree (Tr. 200-201) and Jane Brake (Tr. 239-240), the non-examining medical reviewers, to the vocational expert. (Tr. 1208). The plaintiff's treating sources at the Kentucky River Community Care Center (Tr. 633-647) and the Cumberland River Community Care Center (Tr. 648-686, 804-806) did not identity the existence of more severe mental problems than those found by the ALJ. Psychologist Jay Athy, another reviewer, identified somewhat different but not necessarily totally disabling mental restrictions. (Tr. 1047-1048). These reports provide substantial evidence to support the administrative decision.

Dr. Kevin Eggerman, an examining source, did report the existence of "fair" restrictions relating to dealing with stress and relating to co-workers and supervisors which were arguably not presented to the vocational expert. (Tr. 185). However, Dr. Eggerman diagnosed only alcohol dependence and opioid dependence in early full remission. (Tr. 185). Thus, his mental restrictions would be the result of polysubstance abuse. Public Law 104-121 now precludes a finding of disabled status when substance abuse is a contributing material factor and, so, these

restrictions could not support a disability claim. The record also reveals that Wagers was hospitalized at Appalachian Regional Hospital on three occasions but these hospitalizations all related primarily to polysubstance abuse. (Tr. 694-803, 984-1005).

Wagers notes that the record indicates that he was diagnosed with cirrhosis in September of 2000, and this condition was not addressed in the ALJ's decision. However, the plaintiff cites no functional restrictions which relate to this problem which were not presented in the hypothetical question. The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Therefore, the Court finds no error.

Wagers argues that the ALJ did not properly evaluate his subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Wagers was found to be suffering from a potentially painful condition. However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the

Wagers

alternative second prongs. The actual jobs found available to him could still be performed even under the limitations indicated by Dr. Beliveau, the treating source. Dr. Kidd on three occasions made largely normal findings upon physical examination. (Tr. 191-198, 612-622, 1027-1031), Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ properly evaluated Wagers' pain complaints.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 14th day of May, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**